UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ImageTrend, Inc.,                                   Case No. 22-cv-0254 (WMW/DTS)

                              Plaintiff,

                                                    **ORDER GRANTING IN PART AND**
       v.                                           **DENYING IN PART DEFENDANTS'**
                                                    **MOTION TO DISMISS**

Locality Media, Inc., et al.,

                              Defendants.

---

This matter is before the Court on Defendants' April 23, 2022 motion to dismiss Plaintiff's amended complaint for lack of jurisdiction and failure to state a claim on which relief can be granted.[1]  (Dkt. 20.)  For the reasons addressed below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff ImageTrend, Inc., is a Minnesota corporation that provides software used for data collection, resource management, reporting and analytics for public safety organizations nationwide.  Defendant Locality Media, Inc., doing business as First Due (First Due), is a Delaware corporation, headquartered in New York, that provides software to fire departments.  Defendant Richard French is a First Due employee.

---

[1]      Defendants' March 18, 2022 motion to dismiss Plaintiff's original complaint, (Dkt. 10), is denied as moot in light of the filing of Plaintiff's amended complaint on April 8, 2022.  *See Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) ("[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot.").

Defendants Richard Dutcher, Anne Hulsether, Victoria Koistinen and Nicholas Spring are First Due employees who formerly worked for ImageTrend.

ImageTrend alleges that two of its employees—namely, Elite Product Sales Executive Justin Dillard and Account Executive Joseph Robinson—resigned in January 2021 to work for First Due.[2]  Beginning in July 2021, Dillard began attempting to recruit other ImageTrend employees to work for First Due.  Thereafter, First Due allegedly induced several former ImageTrend employees—including Dutcher, Hulsether, Koistinen and Spring—to steal ImageTrend's intellectual property both during and after their departure from ImageTrend.

ImageTrend executed a security scan of its network infrastructure in January 2022. During this investigation, ImageTrend learned that its Elite Platform—a cloud-based software platform for ImageTrend's customers—had been accessed by an IP address identical to an IP address consistently used by former ImageTrend employee Spring.  In addition, ImageTrend discovered that this access to the Elite Platform occurred through an account created by an ImageTrend client—namely, the Staunton Fire Department in Staunton, Virginia.  French, who began his employment with First Due in October 2021, also works for the Staunton Fire Department as an Elite System Administrator and, in that role, has access to ImageTrend's information.  As part of its investigation, ImageTrend learned that the Elite Platform had been accessed via two Staunton Fire Department usernames on multiple occasions between October 2021 and January 2022.

---

[2]     Neither Dillard nor Robinson are parties to this lawsuit.

ImageTrend commenced this lawsuit in January 2022 and filed an amended complaint in April 2022. ImageTrend alleges that, as a result of the foregoing conduct, First Due gained illegal access to and acquired ImageTrend's confidential, nonpublic and proprietary information. Counts I and II allege that Defendants misappropriated ImageTrend's trade secrets in violation of state and federal law. Count III alleges that Dutcher, Hulsether and Koistinen breached their fiduciary duties to ImageTrend. Count IV alleges that First Due has been unjustly enriched. Count V alleges that Defendants engaged in a civil conspiracy to unlawfully solicit ImageTrend employees and misappropriate ImageTrend's trade secrets. Count VI alleges that Defendants engaged in civil theft of ImageTrend's personal property. Counts VII and VIII allege that First Due tortiously interfered with ImageTrend's contractual relations. And Count IX alleges that First Due and Hulsether engaged in corporate defamation. Defendants move to dismiss every count of ImageTrend's amended complaint.

## ANALYSIS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not *prove* his or her case at the pleading stage, nor do the pleadings require detailed factual allegations to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (observing that "specific facts are not necessary" and pleadings "need only give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests" (internal

quotation marks omitted)).   To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).   Factual allegations that raise only a speculative right to relief are insufficient.  *Twombly*, 550 U.S. at 555.   A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff.  *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).   But legal conclusions couched as factual allegations are not accepted as true. *Twombly*, 550 U.S. at 555.   And mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fail to state a claim for relief.  *Id.*

Defendants move to dismiss ImageTrend's claims on several bases.   The Court addresses each argument in turn.

## I.   Anti-SLAPP Statute

Defendants first argue that ImageTrend's claims are barred by New York's recently amended anti-strategic litigation against public participation (anti-SLAPP) statute.   ImageTrend counters that New York's anti-SLAPP statute is inapplicable here.

As a threshold matter, the parties dispute whether Minnesota or New York law applies.   "When deciding choice-of-law issues, the district court sitting in a diversity action generally applies the choice-of-law rules of the forum state."  *Glob. Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 844 (8th Cir. 2009).   Defendants do not thoroughly address the applicable choice-of-law analysis.   But the Court need not resolve this issue.   For the reasons addressed below, assuming without deciding that New York

law applies, New York's anti-SLAPP statute does not warrant dismissal of ImageTrend's claims.

New York's anti-SLAPP statute provides that "[a] defendant in an action involving public petition and participation . . . may *maintain an action, claim, cross claim or counterclaim* to recover damages, including costs and attorney's fees, from any person who commenced or continued such action . . . without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a (emphasis added).  "Anti-SLAPP laws are intended to deter actions filed to punish or harass a defendant for participating in public life." *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022).  But New York's anti-SLAPP statute does not bar a plaintiff's claim.  *Id.* at 582.  Rather, the anti-SLAPP statute provides "the availability of monetary relief for the institution and continuation of baseless lawsuits in certain circumstances."  *Id.*  Recent amendments to New York's anti-SLAPP statute "alter some New York procedures when applied to actions covered by the new law."  *Id.* But none of these amendments "creates a defense that would knock [a] plaintiff out of court if all the allegations of her complaint are true."  *Id.*  "To put it another way, assuming that the facts are as plaintiff claims them to be, nothing in the anti-SLAPP law would defeat [a plaintiff's] complaint."  *Id.* (concluding that New York's anti-SLAPP statute does not create an affirmative defense).

Nothing in the anti-SLAPP statute displaces a cause of action or negates an essential element of ImageTrend's claims.  Rather, the anti-SLAPP statute permits Defendants to seek damages from ImageTrend for commencing or maintaining a baseless

lawsuit by asserting a counterclaim that Defendants would have the burden to prove. N.Y. Civ. Rights Law § 70-a. Moreover, on a motion to dismiss, the Court assumes that the facts alleged in ImageTrend's amended complaint are true. As such, New York's anti-SLAPP statute is not a basis for dismissing any of ImageTrend's claims.

For these reasons, the Court denies Defendants' motion to dismiss on this basis.

## II.     Misappropriation of Trade Secrets (Counts I and II)

Defendants next argue that ImageTrend fails to state a claim for misappropriation of trade secrets under state or federal law. Counts I and II of the amended complaint allege that Defendants misappropriated ImageTrend's trade secrets in violation of the Minnesota Uniform Trade Secrets Act (MUTSA) and the federal Defend Trade Secrets Act (DTSA), respectively.

Because MUTSA and DTSA are materially similar, courts analyze such claims together. *See, e.g.*, *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). Both MUTSA and DTSA define a "trade secret" as information that "(1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy." *Wyeth v. Nat. Biologics, Inc.*, 395 F.3d 897, 899 (8th Cir. 2005) (citing Minn. Stat. § 325C.01, subdiv. 5); *accord CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018) (citing 18 U.S.C. § 1839(3)). "Misappropriation, in turn, is defined as the acquisition, disclosure, or use of another's trade secrets by improper means." *CPI Card Grp.*, 294 F. Supp. 3d at 807–08 (internal quotation marks omitted) (citing Minn.

Stat. § 325C.01, subdiv. 3; 18 U.S.C. § 1839(5)).  MUTSA and DTSA define "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Minn. Stat. § 325C.01, subdiv. 2; *accord* 18 U.S.C. § 1839(6).   As such, to state a claim under MUTSA and DTSA, ImageTrend must allege facts that plausibly demonstrate that it has "trade secrets" and that Defendants "misappropriated" those trade secrets.  *Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 938 (D. Minn. 2019).

"Because of the sensitive nature of the alleged trade secret information underlying [misappropriation] claims, a plaintiff need not identify its trade secrets with specificity in the Complaint."  *Id.* at 939 (internal quotation marks, brackets and ellipsis omitted).  However, "as with any claim, the plaintiff cannot rely on conclusory statements that simply repeat the elements of its claim; the plaintiff must disclose sufficient information to infer more than a mere possibility of misconduct."  *Id.* (internal quotation marks omitted).  A plaintiff's "generalized assertions and cursory descriptions" of alleged trade-secret information may be insufficient, and "information that an employer marks as 'confidential' is not automatically or even necessarily 'trade secret' information."  *CPI Card Grp.*, 294 F. Supp. 3d at 809 (internal quotation marks omitted).  As such, a plaintiff cannot merely represent that the information is confidential.  *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010).

Defendants first contend that ImageTrend has not identified any "trade secret" information with sufficient specificity.   Although the amended complaint includes

numerous references to broad categories of allegedly "highly sensitive confidential information" or "proprietary" information, such generalized references—without more— are insufficient to plausibly allege that these categories of information are "trade secrets." *See id.* Although the "exact nature of the trade secret is a matter for discovery," *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1042 (D. Minn. 2013) (internal quotation marks omitted), a plaintiff nonetheless "must set forth facts showing that the information had independent economic value due to its secrecy, was not readily ascertainable by others and that [the plaintiff] took efforts to maintain its secrecy," *Hot Stuff Foods*, 726 F. Supp. 2d at 1044. Significantly, ImageTrend's generalized allegations do not plausibly suggest that these broad categories of "confidential" information had independent economic value because of their secrecy or that this information was not readily ascertainable by others. And although the amended complaint includes general allegations about ImageTrend's security protocols and overall efforts to maintain secrecy, there are no allegations that connect these protocols to any particular document or piece of information. As such, these generalized allegations are insufficient to state a misappropriation claim. The Court, therefore, focuses its analysis on the several more specific allegations pertaining to purported trade secret information.

The amended complaint alleges that Hulsether accessed and *might* have stolen three specific documents: a spreadsheet that "contained a comprehensive list of ImageTrend's current customers and their contact information," a PowerPoint presentation that "contained strategic planning information known and distributed only to

ImageTrend executive leadership," and a spreadsheet that "contained specific information regarding a current project implementation plan for ImageTrend's largest client."[3]  But customer lists and business strategy information do not necessarily qualify as trade secrets.  *See, e.g.*, *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 868 (D. Minn. 2015) (observing that "[c]ustomer lists, pricing information, long-term sales strategies, and customer buying habits do not necessarily constitute trade secrets" and collecting cases); *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999) (observing that some business information "is either readily ascertainable or will quickly become obsolete, thereby losing its independent economic value").  ImageTrend's amended complaint contains no factual allegations that suggest its customer lists have independent economic value because of their secrecy and are not readily ascertainable by others, nor does the amended complaint address what efforts ImageTrend took to keep this information secret.  The amended complaint also lacks any allegations that would establish these factors with respect to generically described "strategic planning information" and "project implementation plan[s]."  Indeed, the amended complaint makes no effort to describe what plans, projects or clients these documents pertain to or allege any facts that could demonstrate how this information satisfies the statutory definitions of "trade secret."  For these reasons, the trade secret allegations pertaining to Hulsether fail to state a misappropriation claim.

---

[3]      The latter two documents, according to the amended complaint, were "attached . . . to an email from [Hulsether's] personal Gmail account" while she was employed by ImageTrend.  But there are no allegations about whether she sent this email and, if so, to whom she sent the email or for what purpose.

The amended complaint also alleges that Koistinen disclosed "confidential strategic business plans and sensitive client information including meeting notes related to an ImageTrend client" from a private business meeting she attended.  Koistinen also allegedly accessed and *might* have retained or disclosed a document that "contains specific and detailed information regarding a current software project being implemented by ImageTrend for its largest client . . . including the project charter, project status, obstacles, customer contact information, and specific product information and implementation."  Like the allegations pertaining to Hulsether, there are no allegations as to the specific information Koistinen allegedly disclosed that suggests this information had independent economic value attributable to its secrecy and is not readily ascertainable by others or describes the efforts ImageTrend made to keep this particular information secret.  Strategic business plans and client information are not necessarily trade secrets merely because a plaintiff refers to this information as "confidential."  *See Hot Stuff Foods*, 726 F. Supp. 2d at 1044.  An individual's personal meeting notes could contain a wide range of possible information.  "[D]etailed information regarding a current software project" does not necessarily suggest the existence of the factors relevant to the statutory definition of a "trade secret."  For instance, although the amended complaint references ImageTrend's software and "intellectual property" generally, it does not identify—let alone describe—any particular product or information that is subject to patent, trademark or copyright protection.  For these reasons, the trade secret allegations pertaining to Koistinen fail to state a claim for misappropriation.

The trade secret allegations pertaining to the other defendants are similarly vague. For example, ImageTrend alleges that Spring stole "ImageTrend backup data, project management files, Elite programming information/files, and ImageTrend's customized SQL scripts," which allegedly "provide a road map of the architecture of the Elite Platform and would greatly simplify the reverse engineering of the Elite Platform." And Spring, Koistinen and French allegedly "unlawfully gained access to . . . new information and innovations." These vaguely alleged facts, even if true, do not establish the nature or identify of this information, whether this information has independent economic value due to its secrecy and is not readily ascertainable by others or what efforts ImageTrend took to keep this particular information secret.

When a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Here, ImageTrend's allegations are merely consistent with the possibility that the allegedly stolen information might contain trade secrets. The amended complaint identifies broad categories of documents and information, together with several individual documents, none of which is inherently confidential or supports an inference that the information derives economic value from secrecy and is not readily ascertainable by others. ImageTrend's largely broad and vague allegations do not plausibly establish that any of the information at issue

qualifies as "trade secret" information under MUTSA or DTSA, nor do the allegations plausibly connect any specific trade secret with a specific act of misappropriation.[4]

For these reasons, the Court grants Defendants' motion to dismiss Counts I and II of the amended complaint and dismisses these claims without prejudice.

### III.   Unjust Enrichment, Civil Theft and Tortious Interference (Counts IV, VI and VII)

Defendants next move to dismiss ImageTrend's claims for unjust enrichment, civil theft and tortious interference with contract, as alleged in Counts IV, VI and VII of the amended complaint. Defendants contend that MUTSA displaces these claims.

MUTSA expressly "displace[s] conflicting tort, restitutionary, and other law of [Minnesota] providing civil remedies for misappropriation of a trade secret." Minn. Stat. § 325C.07(a). MUTSA does not displace contractual claims or civil remedies that are not based on misappropriation of a trade secret. Minn. Stat. § 325C.07(b)(1)–(2). As such, "a plaintiff may maintain separate causes of action to the extent that the causes of action have more to their factual allegations than the mere misuse or misappropriation of trade secrets." *Protégé Biomedical*, 394 F. Supp. 3d at 940 (internal quotation marks omitted).

A party may plead alternative or inconsistent claims or defenses. Fed. R. Civ. P. 8(d)(2)–(3). For this reason, courts routinely decline to dismiss inconsistent claims when pleaded in the alternative. *See, e.g.*, *In re Polaris Mktg., Sales Pracs., & Prods. Liab.*

---

[4]   The specific allegations in the amended complaint suggest that ImageTrend's former employees merely *accessed* or *had access to* ImageTrend's information while employed by ImageTrend. The amended complaint merely speculates vaguely—often "on information and belief" or through a series of ambiguous or conclusory inferences— that these employees subsequently stole, used or disclosed this information improperly.

*Litig.*, 364 F. Supp. 3d 976, 985–86 (D. Minn. 2019) (denying motion to dismiss unjust-enrichment claim pleaded in the alternative and collecting cases).  Here, the amended complaint expressly provides that Counts IV through VII are pleaded in the alternative "[t]o the extent that any of the allegations pertaining to misappropriation of confidential and proprietary information do not constitute 'trade secrets.' "  And for the reasons addressed above, ImageTrend's MUTSA and DTSA claims must be dismissed because ImageTrend has not plausibly alleged the existence of a trade secret that Defendants could have misappropriated.  Moreover, some of ImageTrend's factual allegations are broader than the alleged misappropriation of trade secrets, such as the allegation that First Due caused the Staunton Fire Department to breach its contractual agreement with ImageTrend by misusing ImageTrend's software and causing possible violations of the Health Insurance Portability and Accountability Act (HIPAA).  For these reasons, MUSTA does not necessarily displace ImageTrend's claims for unjust enrichment, civil theft and tortious interference with contract, and dismissal of these claims on this basis is unwarranted.

Defendants argue, in the alternative, that ImageTrend fails to state a claim for unjust enrichment or tortious interference with contract because ImageTrend does not allege what financial benefits First Due obtained, or what damages ImageTrend sustained, as a result of this conduct.  The amended complaint alleges that First Due has "unjustly enriched itself at ImageTrend's expense" to the extent that First Due "obtained any income or financial benefit" because of Defendants' alleged conduct, including

breaches of fiduciary duties, civil theft and tortious interference with a contractual relationship. In addition, the amended complaint alleges that First Due improperly procured and encouraged unauthorized access to and misuse of ImageTrend's information and software, which resulted in possible HIPAA violations. The amended complaint also repeatedly alleges that First Due improperly obtained valuable information that belongs to ImageTrend, which could damage ImageTrend's business and provide an improper competitive business advantage to First Due. Although minimal, these allegations plausibly satisfy the damages element of ImageTrend's unjust-enrichment and tortious-interference claims.

Accordingly, the Court denies Defendants' motion to dismiss Counts IV, VI and VII of the amended complaint.

### IV.    Breach of Fiduciary Duty (Count III)

Defendants next argue that ImageTrend fails to state a claim for breach of fiduciary duties, as alleged against Dutcher, Hulsether and Koistinen in Count III of the amended complaint.

"An employee's duty of loyalty prohibits her from soliciting the employer's customers for herself, or from otherwise competing with her employer, while she is employed." *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). An employee's fiduciary duties to her employer also include a common law duty not to use confidential information obtained from her employer, even if that information does not qualify as a trade secret. *Eaton Corp. v. Giere*, 971 F.2d 136, 141 (8th Cir.

1992) (applying Minnesota law).  Although an employee has the right to *prepare* to compete with her employer while she remains employed, there "is no precise line between acts by an employee [that] constitute prohibited 'solicitation' and acts [that] constitute permissible 'preparation.' " *Rehab Specialists*, 404 N.W.2d at 304–05.  As such, "[w]hether an employee's actions constituted a breach of her duty of loyalty is a question of fact to be determined based on all the circumstances of the case." *Id.* at 305.

The amended complaint alleges that ImageTrend's policies prohibit employees from disclosing proprietary information, including customer lists or information that a competitor could use to gain an inappropriate advantage, or from accessing such information for any purpose other than conducting ImageTrend business.  While employed by ImageTrend, Hulsether allegedly accessed confidential and proprietary ImageTrend information, including customer information, several days before she began working for ImageTrend's competitor.  She attached some of this information to an email in her personal email account, connected an external hard drive and a flash drive to her ImageTrend computer and retained those devices.  The day after she resigned, Hulsether allegedly contacted and solicited numerous ImageTrend clients on behalf of First Due and, in doing so, disclosed confidential and proprietary ImageTrend information.  Similarly, while still employed by ImageTrend, Koistinen disclosed confidential and proprietary information to Hulsether and First Due.  Koistinen also allegedly accessed a document containing proprietary ImageTrend information that corresponded to a file with an identical title, "ImageTrend Implementation Schedule 7.23.21," that was saved on

Koistinen's personal Google Drive account.  And Dutcher, on the same day that he resigned from ImageTrend to work for First Due, allegedly emailed ImageTrend's confidential and proprietary client information to his personal email account for use at First Due.  These facts and the reasonable inferences drawn from these facts, if proven to be true, could plausibly establish that Hulsether, Koistinen and Dutcher engaged in conduct while employed by ImageTrend that breached their fiduciary duties of confidentiality and loyalty to ImageTrend.  And these inferences support a breach-of-fiduciary-duties claim even if the information at issue does not qualify as "trade secret" information.  *See Eaton Corp.*, 971 F.2d at 141.

Accordingly, the Court denies Defendants' motion to dismiss Count III of the amended complaint.

## V.    Civil Conspiracy (Count V)

Defendants next argue that ImageTrend fails to state a civil-conspiracy claim, as alleged in Count V of the amended complaint.

To state a civil-conspiracy claim, a plaintiff must allege that two or more defendants "agreed to accomplish an unlawful purpose, and took concerted actions to achieve that purpose." *Marty H. Segelbaum, Inc. v. MW Cap., LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009).  An alleged civil conspiracy "must be based on an underlying intentional tort," and "a plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy." *Id.*

Here, the amended complaint alleges that Defendants engaged in a "campaign to poach ImageTrend employees" and "misappropriate and steal ImageTrend's trade secret information."   But persuading a competitor's at-will employees to change their employment is neither tortious nor otherwise unlawful.  And for the reasons addressed in Part II of this Order, ImageTrend has not plausibly alleged the misappropriation of any trade secret information.  Moreover, the amended complaint does not reasonably tether the alleged civil conspiracy to any other tortious conduct alleged in the complaint.  Many of the allegations pertain to distinct conduct by separate individuals that, aside from temporal proximity, have no apparent direct connection.[5]  Nor do these allegations create a reasonable inference that multiple defendants reached a conscious agreement or coordinated their efforts to engage in tortious conduct.  Because the amended complaint includes no factual allegations that plausibly suggest that all six defendants agreed to engage in tortious conduct and took concerted actions to achieve that purpose, ImageTrend's civil-conspiracy claim must be dismissed.

The Court, therefore, grants Defendants' motion to dismiss Count V of the amended complaint and dismisses this claim without prejudice.

### VI.   Tortious Interference with Prospective Contractual Relationships (Count VIII)

Defendants argue that ImageTrend fails to state a claim for tortious interference with prospective contractual relations, as alleged in Count VIII of the amended

---

[5]      Indeed, most of the tort claims alleged in the amended complaint are directed at separate defendants with little or no overlap.  Civil theft is the only alleged underlying tort claim common to *all* Defendants.

complaint.  In response, ImageTrend seeks voluntary dismissal of this claim.  The Court grants Defendants' motion to dismiss Count VIII.

## VII.   Corporate Defamation (Count IX)

Defendants next contend that ImageTrend fails to state a claim for corporate defamation, as alleged in Count IX of the complaint.[6]

To state a defamation claim under Minnesota law, a plaintiff must allege that the statement or communication at issue (1) was communicated to someone other than the plaintiff, (2) was false, (3) would tend to harm the plaintiff's reputation in the community, and (4) pertained to the plaintiff.  *McKee v. Laurion*, 825 N.W.2d 725, 729–30 (Minn. 2013).  Defendants challenge the sufficiency of the allegations with respect to the second and third elements—namely, whether the statement at issue was false and would tend to harm ImageTrend's reputation.

"Truth is a complete defense to a defamation action and true statements, however disparaging, are not actionable."  *Id.* at 730 (internal quotation marks omitted).  When determining whether an allegedly defamatory statement was true, the "underlying implication of the statement" is a relevant consideration.  *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986).  As such, "defamation by implication is a viable cause of action in Minnesota."  *Michaelis v. CBS, Inc.*, 119 F.3d 697, 701 (8th Cir. 1997).  A defendant does not avoid liability in an implied

---

[6]     The amended complaint alleges corporate defamation against both First Due and Hulsether.  In response to Defendants' motion to dismiss, ImageTrend represents that it seeks to pursue this claim only against Hulsether and seeks voluntary dismissal of this claim as to First Due.

defamation case by simply establishing the truth of the statement at issue. *Id.* A true statement may be defamatory by implication based on "the omission of facts" or "the juxtaposition of facts so as to imply a defamatory connection between them." *Id.* An alleged defamatory implication is not actionable, however, if "it qualifies as an opinion." *Toney v. WCCO Television*, 85 F.3d 383, 387 (8th Cir. 1996) (quoting *Diesen v. Hessburg*, 455 N.W.2d 446, 450 (Minn. 1990)).

A court must give the words of an alleged defamatory statement "their obvious and natural meaning unless [the statement is] alleged to have been used and understood in a different sense." *Jadwin v. Minneapolis Star & Trib. Co.*, 390 N.W.2d 437, 442 (Minn. Ct. App. 1986). A court then must determine whether an objectively reasonable person could draw the allegedly false implication from the context surrounding the statement. *Id.*; *see also Nunes v. Lizza*, 12 F.4th 890, 896 (8th Cir. 2021).

Here, the amended complaint alleges that Hulsether sent the following text message to two ImageTrend clients on January 10, 2022: "Imagetrend is suing me." On its face, this statement is true. ImageTrend commenced this lawsuit against Hulsether shortly thereafter, on January 28, 2022. Nonetheless, ImageTrend alleges that the "unmistakable implication of Hulsether's text messages to the ImageTrend clients was that ImageTrend was pursuing legal action against Hulsether for illegitimate and/or improper means." But ImageTrend does not allege that Hulsether omitted facts or juxtaposed multiple statements in a manner that reasonably creates an implication that is either false or defamatory. No person would read the statement "Imagetrend is suing me"

and reasonably infer that ImageTrend was pursing legal action for illegitimate or improper reasons.  Moreover, to the extent that any such inference could be drawn from Hulsether's text messages, the inference would be that, in Hulsether's opinion, ImageTrend's lawsuit is illegitimate or improper.  *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 969 (D. Minn. 2018) (observing that a reference to a lawsuit as "meritless" cannot support a defamation claim because such a statement is "protected opinion").  For these reasons, ImageTrend fails to state a defamation claim.

Accordingly, the Court grants Defendants' motion to dismiss Count IX of the amended complaint and dismisses this claim with prejudice.

## VIII.  Personal Jurisdiction

Defendants also argue that this Court lacks personal jurisdiction over French.  In light of the foregoing analysis, the only remaining claim asserted against French is civil theft of ImageTrend's confidential and proprietary information.

Personal jurisdiction exists when authorized under Minnesota's long-arm statute and the exercise of personal jurisdiction complies with the requirements of due process.  *Westley v. Mann*, 896 F. Supp. 2d 775, 788 (D. Minn. 2012).  Because Minnesota's long-arm statute "extends jurisdiction to the maximum limit consistent with due process," a district court need only evaluate whether the requirements of due process are satisfied.  *Id.* at 789 (internal quotation marks omitted).

Due process requires that a defendant have sufficient "minimum contacts" with a forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Minimum contacts may establish either general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984). General jurisdiction exists when a nonresident defendant's contacts are so substantial and of such a nature that the forum state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts. *See id*. at 415–16. Specific jurisdiction exists "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed [his] activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (internal quotation marks omitted).

To analyze whether sufficient minimum contacts exist, a district court considers (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relationship between the cause of action and those contacts, (4) the interest of the forum state in providing a forum to its residents, and (5) the convenience of the forum to the parties. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). The third factor—the relationship between the cause of action and the contacts to the forum state—differentiates between specific and general personal jurisdiction. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.

2010).  Here, because ImageTrend alleges that this Court has specific jurisdiction over French,[7] the Court analyzes the third factor.

French undisputedly is a Virginia resident.  He has visited Minnesota approximately four times when invited by ImageTrend to attend conferences, most recently in 2019.  According to the amended complaint, French's alleged tortious conduct began in October 2021, approximately two years or more after his last visit to Minnesota.

ImageTrend contends that this Court has specific jurisdiction over French "by virtue of the fact that he is alleged to have illicitly accessed the Elite Platform, which is physically located in Minnesota."  The "*Calder* effects test" provides that a defendant's tortious acts can serve as a source of personal jurisdiction only if "the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Johnson*, 614 F.3d at 796 (internal quotation marks and brackets omitted).  The United States Court of Appeals for the Eighth Circuit has "construe[d] the *Calder* effects test narrowly" and held that, "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797.

Here, the amended complaint alleges that ImageTrend's "information technology resources and assets . . . are physically located in Minnesota."  The amended complaint

---

[7]    ImageTrend also alleges that the Court has personal jurisdiction over French because he engaged in a tortious conspiracy that affected Minnesota.  However, for the reasons addressed above, ImageTrend fails to state a civil-conspiracy claim.

also alleges that French, as the Staunton Fire Elite System Administrator, had authorized access to the Elite Platform software.  Between October 13, 2021, and January 5, 2022, one or more unspecified "users" allegedly accessed the Elite Platform software using French's account usernames.  Aside from speculative statements based on "information and belief," the amended complaint does not specifically allege who accessed the software or for what purpose, nor does the amended complaint identify any particular information that was improperly accessed, taken or used.  These vague allegations do not sufficiently demonstrate that French intentionally engaged in tortious conduct—namely, alleged civil theft of confidential information—that he uniquely aimed at Minnesota with the goal of causing harm that he knew would likely be felt in Minnesota.  Although French apparently knew that ImageTrend is based in Minnesota, this knowledge is insufficient to satisfy the *Calder* effects test.  *See id.* at 796.  Moreover, there is no allegation that French knew that the Elite Platform was physically located in Minnesota, that he expressly or uniquely aimed his conduct at Minnesota or that he acted with "the very purpose" of causing harm in Minnesota.  *Id.* (internal quotation marks omitted).

For these reasons, the Court grants Defendants' motion to dismiss French from this lawsuit for lack of personal jurisdiction.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss, (Dkt. 20), is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Defendants' motion is **GRANTED** as to Counts I, II, V and VIII of the amended complaint, and these claims are **DISMISSED WITHOUT PREJUDICE**;

2.      Defendants' motion is **GRANTED** as to Count IX of the amended complaint, and this claim is **DISMSISED WITH PREJUDICE**;

3.      Defendants' motion is **GRANTED** as to Defendant Richard French, and Plaintiff's claims against French are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction; and

4.      Defendants' motion is **DENIED** in all other respects.


Dated: November 22, 2022                              s/Wilhelmina M. Wright
                                                     Wilhelmina M. Wright
                                                     United States District Judge